**CLOSED**

NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEMAL SHEIKA, : | |
| : | **Civil Action No. 09-3114 (SRC)** |
| Petitioner, : | |
| : | **OPINION** |
| v. : | |
| : | |
| UNITED STATES OF AMERICA, : | |
| : | |
| Respondent. : | |
| : | |
| : | |

**CHESLER**, District Judge

      This matter comes before the Court upon the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by Petitioner Gemal Shieka [docket item #1]. The United States of America has opposed the motion. This Court has considered the submissions by the parties in connection with these motions, as well as the oral arguments and testimony heard before this Court on January 22, 2010. For the reasons discussed below, this Court denies Petitioner's Motion to Vacate, Set Aside, or Correct Sentence [docket item #1].

**I.    FACTUAL BACKGROUND**

      Petitioner was convicted of substantive violations of mail fraud and credit card fraud and conspiracy to commit mail fraud and credit card fraud, in violation of 18 U.S.C. §§ 371, 1029 and 1341. On December 21, 2005, Hon. William G. Bassler sentenced Petitioner to 78 months in prison. Petitioner appealed on various grounds and the Third Circuit remanded the case for resentencing based a two-level sentencing enhancement. On April 16, 2009, this Court

resentenced Petitioner to 71 months' imprisonment. Petitioner asks this Court to vacate his entire sentence and resentence him to time served. Petitioner argues that he was denied effective assistance of counsel. Specifically, Petitioner asserts that his counsel was ineffective by discouraging him to accept the government's plea offers. Petitioner further argues that his counsel committed numerous pre-trial, trial and post-trial errors which deprived Petitioner of his right to effective counsel. The Court heard oral argument and testimony on January 22, 2010 regarding the alleged ineffective assistance of counsel.

## II.     Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence

Petitioner claims that his sentence should be vacated and corrected due to trial counsel's ineffectiveness regarding Petitioner's decision not to accept the plea offers.[1] A claim for ineffective assistance must demonstrate: "[f]irst . . . that counsel's performance was deficient . . . [s]econd, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable". Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner must show both ineffectiveness and prejudice. Id. To prove prejudice, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient

---

[1] Petitioner also provides over forty other claims of ineffective assistance of counsel. This kitchen sink approach was rejected by the Third Circuit. United States v. Gemal Sheika, 304 Fed. Appx. 135, 136, 2008 WL 5351897 (3d Cir. 2008) ("...advocacy is measured by effectiveness, not loquaciousness."). These claims are grossly inadequate and do not demonstrate that Mr. Rifai rendered ineffective assistance. To prevail on his claims, Petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The Court will focus its Opinion on the Petitioner's decision not to accept the plea offers.

to undermine confidence in the outcome.  Id. at 694.

Specific to plea offers, an attorney's conduct is incompetent when the plea offer is never communicated by the attorney to the client. United States v. Barber, 808 F. Supp. 361, 377 (D.N.J. 1992), citing United States v. Day, 969 F.2d 39, 42-44 (3d. Cir. 1992).  Incompetence can also be found when the plea information is communicated insufficiently, as to prevent the client from making a reasonable decision. Id. at 43.  Here, the plea offer was communicated sufficiently to Petitioner.  In April 2005, Petitioner admitted that he reviewed the plea offer contained in the proposed March 14, 2005 plea agreement which specifically disclosed a potential sentence of up to five years in jail.  Tr. at 93-94; 92:25.  Petitioner was further specifically informed in open court that a plea offer had been extended.  Ex. 1, Hr'g Tr. June 9, 2005, at 14.  The Government stated on the record: "I want to set that on the record while defendant is here" that the plea was extended for short period of time.  Id. Petitioner's counsel responded that Petitioner was not taking the offer.  Although Petitioner consistently maintained that he informed his attorney to take the offer, Petitioner never once attempted to communicate this to the trial judge or indicate any dissatisfaction to the Court prior to trial.

Petitioner's testimony as to his knowledge of the plea and his sentencing exposure reflects grave inconsistencies.  For example, Mr. Sheika fluctuates greatly when describing his potential exposure.  Petitioner testified that he never heard he could face 18 months in prison, but then retracted that statement.  Tr. at 76:19-77:16.  Petitioner also testified that, prior to conviction, he never heard he could receive as much as five years imprisonment.  The hearing, however, demonstrated that Petitioner was informed of the statutory maximum several months before trial.  Tr. at 93-94.  Furthermore, the Court finds it incredible that Petitioner was unable to

recall any details of a lunch meeting with a close friend, who is also the brother of a cooperating witness.  Given the importance of the lunch meeting, the Court finds it incredible that Petitioner was outside or on the phone for much of the meeting.  Tr. 141-42.  In short, Petitioner's testimony in many ways appeared tailored to meet the exigencies of the situation.  Indeed, the Court finds that Mr. Sheika was not a credible witness with regard to his testimony concerning Mr. Rifai's failure to communicate plea offers and Mr. Rifai's allegedly incorrect advice concerning the criminal exposure.

While, as reflected in Judge Bassler's comments concerning Mr. Rifai's trial conduct, Mr. Rifai may not have been a model criminal trial counsel, the Court, nevertheless, concludes that his testimony is much more credible.  While Mr. Rifai did not have a detailed memory of all contacts and advice given, in many ways, that is precisely what one would expect from an attorney recalling an attorney-client relationship which occurred over four years ago.  Mr. Rifai was consistent in his assertions that he communicated the plea offer to Petitioner and that Petitioner did not accept the offer.  Tr. at 162:22-163:3-12.  Specifically, Mr. Rifai unequivocally testified that "there was no doubt in his mind that [Petitioner] did not agree with the plea offer." Tr. at 166:25-167:9.  Mr. Rifai was certain that he had communicated all offers to Petitioner and he allowed Petitioner to make his own decisions.  Id. at 162-167.  Mr. Rifai further testified that in connection with his plea negotiations with the Government, he utilized information provided by the Petitioner that proved to be erroneous.  For example, Petitioner falsely informed Mr. Rifai that Petitioner had been our of the country during the pendency of the criminal acts.  Tr. at 189:6-17.

Due to the fact that Petitioner declined the plea offers of the Government, Mr. Rifai sent a

4

counteroffer at Petitioner's request. Pet. Ex. P-6, Counteroffer dated July 14, 2005. This written counteroffer, in significant respects, coincided with defense positions put forth by Petitioner. For example, Mr. Rifai stated that Petitioner wanted to reduce the loss amount of the plea offer to under $30,000. Tr. at 167:4-25. This is consistent with Petitioner's testimony that he only profited $3,000 from the criminal activities and that it was a "legitimate business." Tr. at 61, 68, 100, 101. The Court is convinced that Mr. Rifai would not have sent a counteroffer without first consulting with Petitioner about the terms of the Government's offer and counteroffer. In fact, Mr. Rifai testified that the counteroffer was crafted after a specific consultation with Defendant, and Petitioner was cc'd on the counteroffer. Tr. at 165-170; Pet. Ex. P-6, Counteroffer dated July 14, 2005. In short, the Court accepts Mr. Rifai's testimony on these issues and is satisfied that the record before the Court indicates that Mr. Rifai took aggressive stances with the Government in plea negotiations at the Petitioner's insistence.

Furthermore, Shieka's insistence that he would have pled guilty if properly represented conflicts with his protestations of innocence and consistent effort to minimize his culpability, both at sentencing and the § 2255 hearing. Sent. Tr. at 30-35; Tr. at 64:1-10, 101:8-20 ("I never in my life disrespected the law"; "I wasn't doing anything wrong with the crystal [credit card] machine.") Such assertions both impact his credibility and demonstrate the unlikeliness that he would have pled guilty but for Mr. Rifai's alleged advice. Indeed, Mr. Rifai also specifically testified that he never advised Petitioner to reject the plea offer, that he, instead, merely discussed offers, alternatives and benefits. Tr. 188-89. In short, none of Mr. Rifai's alleged actions, either singularly, or cumulatively, impacted the outcome of the litigation. Petitioner has failed to demonstrate ineffectiveness and prejudice as required under Strickland.

**III.   CONCLUSION**

For the foregoing reasons, the Court denies Petitioner's motion to vacate, set aside, or correct sentence [docket item #1]. An appropriate form of Order will be filed together with this Opinion.

                                                                  s/ Stanley R. Chesler
                                                              STANLEY R. CHESLER
                                                              United States District Judge

DATED: March 12, 2010